[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13278

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHRISTOPHER MAYO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:21-cr-00020-WLS-TQL-1

_____

Before JORDAN, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Less than three months after Christopher Mayo pleaded guilty to possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), he sought to withdraw his guilty plea. He argued that his attorney provided ineffective assistance of counsel by failing to advise him that he qualified as a career offender and coercing him to sign a plea agreement and submitting it without his consent. After a hearing, the district court denied his motion to withdraw his guilty plea. On appeal, Mayo maintains that his attorney rendered ineffective assistance of counsel. Because he cannot show prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), we affirm.

## I.    BACKGROUND

The United States charged Mayo with possession of five grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). Given this drug quantity, Mayo faced a minimum of five years and a maximum of 40 years' imprisonment. *See* § 841(b)(1)(B)(viii). He pleaded not guilty. The magistrate judge appointed attorney William Bubsey as his counsel.

After appearing in the case, Bubsey filed a motion to suppress evidence, arguing that law enforcement officers had violated Mayo's constitutional rights during a traffic stop. The district court

held an evidentiary hearing on the motion to suppress and denied the motion.

The government then filed a superseding information charging Mayo with one count of possession of methamphetamine with intent to distribute, in violation of § 841(a)(1) and (b)(1)(C). The superseding information removed the allegation that the offense involved five grams or more of methamphetamine. As a result, Mayo faced a maximum sentence of 20 years' imprisonment—as opposed to the 40 years he faced before the superseding information—with no mandatory minimum. *See* § 841(b)(1)(C). On the same day that the government filed the superseding information, Mayo signed a written plea agreement, and the district court held a change-of-plea hearing.

In the written plea agreement, Mayo confirmed that he reviewed and discussed the superseding information and the government's evidence against him with his attorney. He admitted that the government could prove beyond a reasonable doubt that he "knowingly possessed a quantity of methamphetamine with the intent to distribute." Doc. 59 at 7.[1] He stipulated that an officer stopped his vehicle and detected an odor of marijuana emanating from him and his vehicle. During the stop, the officer learned that Mayo had an outstanding warrant and placed him under arrest. The officer searched his vehicle and found in the center console a

---

[1] "Doc." numbers refer to the district court's docket entries.

plastic bag containing approximately 30 grams of methamphetamine.

The plea agreement recounted that Mayo faced "a sentence of up to twenty (20) years imprisonment." *Id.* at 3. Mayo initialed a statement affirming that he "underst[ood] that the [c]ourt is not bound by any estimate of the probable sentencing range that Defendant may have received from Defendant's attorney, the Government, or the Probation Office." *Id.* And he agreed that "the [c]ourt will not be able to determine the appropriate guideline[s] sentence until after a Presentence Investigative Report has been completed." *Id.* He acknowledged that he could not withdraw his guilty plea if he "received an estimated guideline[s] range from the Government, Defendant's attorney, or the Probation Office which is different from the guideline[s] range computed by the Probation Office in the Presentence Investigative Report and found by the [c]ourt to be the correct guideline[s] range." *Id.* By signing the plea agreement, Mayo agreed that he was "satisfied with the services of [his] attorney . . . [and] knowingly and voluntarily enter[ed] a plea of guilty to Count One of the [s]uperseding [i]nformation." *Id.* at 2.

At the change-of-plea hearing, Mayo admitted under oath that he understood the offense's elements and agreed that the government could prove them beyond a reasonable doubt. He said that he reviewed his plea agreement with his attorney, understood it, and signed it voluntarily. He affirmed that no one made any additional promises not expressed in the agreement. He further acknowledged that he could not withdraw his plea of guilty if the

court imposed a greater sentence than what the parties recommended. He had no questions about the plea agreement when the court inquired.

At the district court's request, the government recited the evidence that it intended to present at trial. Mayo confirmed that the government's recitation was accurate. The court again asked Mayo if he had any questions, and he responded no. Giving him the opportunity to change his mind, the court reminded Mayo that he has a "right to plead not guilty to Count [One] or to plead guilty to Count [One]," and asked him, "what plea do you wish to offer[:] guilty or not guilty?" Doc. 79 at 37. Mayo responded "[g]uilty, sir." *Id.* at 38. The district court thus accepted his guilty plea.

Two months later, a probation officer prepared a draft presentence investigation report ("PSR"). The draft explained that Mayo's offense involved approximately 30 grams of methamphetamine. The draft determined that Mayo qualified as a career offender because his felony in this case was a controlled substance offense and he had two prior felony convictions for either a violent crime or a controlled substance offense. Applying the career offender enhancement, the draft calculated his offense level as 32 but then applied a three-level reduction for acceptance of responsibility and timely pleading guilty. Given his total offense level of 29 and criminal history category of VI, his Sentencing Guidelines range was 151 to 188 months' imprisonment.

Mayo objected to the draft. Shortly after Bubsey filed the objection, Mayo moved to withdraw his guilty plea and change

attorneys. Mayo moved to withdraw his plea because, among other reasons, Bubsey never informed him that he might be sentenced as a career offender. Mayo also alleged that he was "coerced into taking a plea." Doc. 64 at 1.

Before considering Mayo's request to withdraw his plea, the district court scheduled a hearing on his request for a new attorney. After the hearing, the court concluded that Bubsey had not been ineffective but nonetheless granted Mayo's motion, citing a "broken relationship." Doc. 69 at 2. The magistrate judge then appointed a new attorney to represent Mayo.

With the assistance of his new attorney, Mayo filed an amended motion to withdraw his guilty plea. In the amended motion, he asserted that Bubsey was ineffective because Bubsey failed to review the government's discovery with him and had not advised him that he might be sentenced as a career offender. He also argued that his plea was involuntary because, at the time Bubsey submitted the signed written plea agreement, he had not agreed to plead guilty. He further asserted his innocence.

The district court held a separate hearing on Mayo's motion to withdraw his guilty plea. At the evidentiary hearing, Mayo testified that Bubsey told him to go ahead and sign the written plea agreement to save Bubsey time from not having to drive to the detention center, but Bubsey promised not to submit the signed plea agreement to the court until Mayo agreed. Mayo thought that signing the plea agreement was his only option. He further testified that Bubsey told him not to worry about the career offender

sentencing enhancement. Bubsey showed Mayo a chart depicting an 80-month sentence. Mayo said that Bubsey coerced him during the plea colloquy by instructing him how to respond to the district court's questions.

Bubsey admitted that he failed to discuss the career offender enhancement with Mayo before submitting the signed plea agreement. He denied misleading Mayo about signing the written plea agreement, however. He denied instructing Mayo to "sign the plea agreement just in case [Mayo] changed his mind about pleading guilty." Doc 89 at 23. He testified that Mayo opted to plead guilty and voluntarily signed the plea agreement. Bubsey explained that he reviewed the plea agreement with Mayo and informed Mayo that a signed plea agreement was necessary for the court to schedule a change-of-plea hearing. Bubsey testified that he told Mayo, "if you don't want to go through with this, just tell me, and we won't go through with it." *Id.*

After holding a hearing and considering the parties' requests, the district court denied Mayo's motion to withdraw his guilty plea. The court found that Mayo had close assistance of counsel because Bubsey met with Mayo more than once to discuss the plea agreement. The district court also found that Mayo entered a knowing and voluntary plea. The court explained that it held a plea colloquy to confirm that Mayo understood the plea agreement and the maximum possible sentence for the charged offense. The court also emphasized that it reviewed the circumstances in which Mayo could not withdraw his plea of guilty, including if he received a

higher sentence than he expected, which is precisely what Mayo was attempting to do. Thus, the court refused to allow Mayo to withdraw his guilty plea.

After the district court denied Mayo's motion to withdraw his guilty plea, a probation officer prepared a final PSR. Like the draft, the final PSR applied the career offender enhancement, which yielded an offense level of 32.[2] Unlike the draft, no points were deducted for acceptance of responsibility and timely pleading guilty. Thus, the PSR calculated a total offense level of 32 and a criminal history category of VI. The total Guidelines range was 210 to 240 months' imprisonment.

At sentencing, the district court overruled Mayo's objections to the PSR. The court adopted the PSR without change and sentenced Mayo to 200 months' imprisonment and three years of supervised release. Mayo appealed.

## II.    STANDARD OF REVIEW

"On the merits, whether counsel is ineffective is a mixed question of law and fact that we review *de novo*." *Gomez-Diaz v. United States*, 433 F.3d 788, 790 (11th Cir. 2005) (emphasis added). "The preferred means for deciding a claim of ineffective assistance of counsel is through a 28 U.S.C. § 2255 motion." *United States v.*

---

[2] The probation officer recommended applying an obstruction of justice enhancement because, at the hearing on the motion to withdraw the guilty plea, Mayo indicated that he committed perjury during the change-of-plea hearing. But because the PSR determined that the career enhancement applied, the obstruction of justice enhancement had no effect on his offense level.

*Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010). This Court will review such a claim on direct appeal, however, if the record is sufficiently developed. *United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *accord United States v. Verbitskaya*, 406 F.3d 1324, 1337 (11th Cir. 2005).

## III.    DISCUSSION

In this appeal, Mayo asks us to review on direct appeal whether he received ineffective assistance of counsel with respect to his guilty plea. Because he raised the issue while moving to withdraw his guilty plea and the district court held a hearing on the motion, at which both Mayo and his attorney testified, we conclude the record is sufficiently developed for our review.

On appeal, Mayo argues that he was denied effective assistance of counsel because Bubsey (1) failed to advise him about his career offender status and (2) coerced him into pleading guilty and submitted the plea agreement without his consent. We address each argument below.

To establish an ineffective assistance of counsel claim, a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. Under *Strickland*, counsel's performance is deficient only if it falls below an objective standard of reasonableness under prevailing professional norms. *See id.* at 688. In the guilty-plea context, the prejudice requirement is satisfied where the defendant illustrates "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have

insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A court "need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted).

### A. Mayo has not shown that he was prejudiced by Bubsey's failure to advise him about the career offender enhancement.

We begin by considering Mayo's first argument, that his attorney's failure to advise him of his career offender status and its consequences amounted to ineffective assistance of counsel. On appeal, Mayo focuses on Bubsey's deficient performance. He argues that Bubsey assured him that he would not qualify as a career offender and showed a "total disregard" for the possibility that he may receive a criminal offender enhancement. Appellant's Br. 12. Here, we need not decide whether Bubsey's performance was deficient because Mayo has failed to show that he suffered prejudice as a result of his attorney's advice about his potential sentence.

At the plea colloquy, Mayo testified under oath that he received a copy of the superseding information, reviewed the plea agreement with his attorney, entered into the agreement without coercion, and understood the agreement. He affirmed that no one made any assurances outside of the written plea agreement or statements on the record. He acknowledged that the district court was not bound by the government's recommendations but would independently decide his sentence.

According to Mayo, the district court also informed him of the charge against him and reviewed the potential sentence. The court explained that Mayo's offense "carr[ied] a maximum possib[le] penalty of 20 years in imprisonment." Doc. 79 at 13. And the court warned him, "no one knows with certainty at this time what your advisory guideline[s] range will be if you plead guilty to Count [One]." *Id.* at 27. The court advised that "[i]f the advisory guideline[s] range were to turn out to be different than you now expect it to be and you plead guilty, you would not be able to withdraw your plea of guilty on that basis." *Id.* at 28. Mayo replied that he understood the maximum penalty for the charge and that he could not withdraw his guilty plea if the PSR calculated a Guidelines range higher than what he expected.

We have held that a defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary so long as the trial court informed the defendant of the maximum possible sentence. *See United States v. Pease,* 240 F.3d 938, 941 (11th Cir. 2001) (holding that counsel was not ineffective by misadvising him of the length of his potential sentence where the trial court informed him of the maximum possible sentence); *United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990) ("To the extent that [the defendant asserted] his guilty plea was based on his attorney's estimate of the sentence and offense level, the [assertion] did not warrant withdrawal of the guilty plea" because the defendant "acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the sentence the court ultimately imposed."). That is what

happened here. Because Mayo repeatedly affirmed his understanding of how his sentence would be determined—namely, that the district court would determine the sentence and could impose a much greater sentence than he expected—and the court carefully explained the plea's consequences, including the possibility of a statutory maximum sentence, he cannot show that he would have gone to trial but for his attorney's failure to advise him of the career offender enhancement and its consequences. Thus, he has failed to show prejudice.

### B. Mayo has not shown that he was prejudiced by Bubsey's assurances about the plea agreement.

We now turn to Mayo's second argument, that his attorney's submission of the signed plea agreement without his consent constituted ineffective assistance of counsel. He asserts that he "wanted to preserve his right to appeal and/or proceed to trial" and only signed the plea agreement because Bubsey "suggested the plea agreement would not be submitted immediately" in case Mayo "changed his mind." Appellant's Br. 14. Mayo maintains that "but for the signing of the agreement, he would not have had a change of plea hearing and would not have entered a plea and proceeded to trial." *Id.*

Mayo's conclusory assertion that he was tricked or coerced by his counsel is insufficient to establish prejudice. A review of the record confirms that the district court ensured that Mayo was aware of nature of the charges and the consequences of the plea and that the plea was freely, voluntarily, and knowingly given.

Despite having multiple opportunities to change his mind about moving forward with the plea, Mayo instead assured the district court that he was entering the guilty plea voluntarily and without coercion.

At the hearing on the motion to withdraw his guilty plea, Mayo testified that he was "tricked" into signing the plea agreement because Bubsey "had [him] thinking" he would receive a lower sentence. Doc. 89 at 65–67. But Mayo acknowledged that he pled guilty based on Bubsey's professional assessment of his Guidelines range, and "when a defendant pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel." *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984). Because the district court inquired about coercion and Mayo affirmed that there had been none, he cannot establish that his plea was involuntary and thus cannot show prejudice under *Strickland*.

## IV.    CONCLUSION

Because Mayo cannot show prejudice arising from Bubsey's failure to advise him that he might be sentenced under the career offender guideline or from Bubsey's submission of the signed plea agreement, we conclude that his ineffective assistance of counsel claim fails. Accordingly, we **AFFIRM**.